

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 30, 2018**

**United States Bankruptcy Judge**

___

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re** | § | |
| **MICHAEL GEORGE WARDEN,** | § | Case No. 18-30095-HDH-7 |
| Debtor. | § | |
| | § | |
| **ANDREW R. KORN, RECEIVER,** | § | |
| Plaintiff, | § | Adv. Pro. No. 18-03037-HDH |
| **MICHAEL GEORGE WARDEN,** | § | |
| Defendant. | § | |

___

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 1**
86692v

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523 (A)(6)**

There came on to be heard the trial of the Complaint [D.E. 1][1] filed by the Receiver, the Plaintiff in this Adversary Proceeding and a creditor of Warden in the Second Bankruptcy Case, wherein the Receiver requested that this Court determine that the Receiver's claim against Warden in the Second Bankruptcy Case is non-dischargeable under § 523(a)(6) and Bankruptcy Rule 7001(6), all as more fully described in the Complaint.

### I. FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

**A. JURISDICTION AND VENUE**

A. On the First Petition Date, Warden filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code [D.E. 1] initiating the First Bankruptcy Case.

B. On November 29, 2017, the Bankruptcy Court entered an Order [D.E. 30] granting the procedural consolidation and joint administration of the First Bankruptcy Case along with the Ventures Bankruptcy Case, the Melton Bankruptcy Case, and the bankruptcy case of H. Melton Ventures RD, LLC, Case No. 17-44521-MXM-11, into the Ventures Bankruptcy Case.

C. On December 6, 2017, an agreed order [D.E. 31] was entered converting the First Bankruptcy Case from chapter 11 to chapter 7 of the Bankruptcy Code.

D. The First Bankruptcy Case was administratively dismissed on December 11, 2017 when this Court entered an order to that effect [D.E. 35] (the "Dismissal Order") for the failure to

---

[1] All of the capitalized terms used herein will have the meanings ascribed to them in the Complaint, unless otherwise indicated.
[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 2**
86692v

file (a) copies of employee income records within 14 days of the First Petition Date, (b) a statement of monthly income within 14 days of the First Petition Date, and (c) a statement of operations within 7 days of the First Petition Date.  On December 12, 2017, Warden filed his motion [D.E. 36] seeking to reinstate the First Bankruptcy Case (the "Motion to Reinstate") on the grounds that since Warden was an individual and not a corporate entity, he did not have the documents checked off and listed on the Dismissal Order.  Warden did not prosecute his Motion to Reinstate.  Instead, he filed his voluntary petition for relief under 7 of the Bankruptcy Code on the Second Petition Date initiating the Second Bankruptcy Case.

**B.  THE ENTRY OF THE JUDGMENT, APPOINTMENT OF THE RECEIVER, THE ESTABLISHMENT OF THE RECEIVERSHIP ESTATE, AND THE AFFIRMATIVE DUTIES IMPOSED ON MELTON**

E.    On October 6, 2016, X Extreme obtained its Judgment against Warden and two related co-Defendants, Ventures and Melton in the State Court Action, for knowingly and intentionally breaching a contract and a guaranty.  The total amount awarded to X Extreme under the Judgment was $205,832.26, plus post-judgment interest, and additional attorney's fees if the Judgment was appealed.

F.    Melton owns 90% of Ventures, and Warden owns the remaining 10%.  Ventures is a holding company that owns the following entities:  (a) Havana Social Club LLC (100%) (this entity operated a cigar bar at the American Airlines Center, the home of the Dallas Mavericks and the Dallas Stars); (b) HMV The Courtyard Villa LLC (100%) (this entity operates a wedding chapel venue in Arlington, Texas); (c) Spa810 Greenville LLC (100%) (this entity operates a day spa); (d) Spa810 McKinney LLC (50%) (this entity operates a day spa); and (e) Worst Behavior LLC ("Worst Behavior") (100%) (this entity operated a party boat, but the boat was repossessed).  Melton and Warden worked for Ventures and its subsidiaries.

---

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 3**
86692v

G. None of the State Court Defendants made a voluntary payment on the Judgment or cooperated in collection,[3] and X Extreme was unable to collect on the Judgment. X Extreme sought the aid of the State Court in the appointment of a Receiver, and on April 25, 2017, the State Court entered its Receivership Order. Under the Receivership Order, the Receiver was directed to liquidate the State Court Defendants' non-exempt property,[4] and the State Court Defendants were directed to turnover that property, plus the related documentation, to the Receiver, as well as all of their interests in businesses, ventures and all related documents, for that purpose.[5] Under the

---

[3]   See, James N. Gray Co. v. Armtek Sys., Inc., 2006 U.S. Dist. LEXIS 2516, at *9 (E.D. Ky. Jan. 24, 2006) (Courts normally expect defendants to pay any judgment without the Plaintiff having to resort to asset discovery); accord, Denton v. Denton, 147 So. 2d 545, 547 (Fla. App. 1962) ("The plaintiff as well as the defendant must honor the orders and judgments of the court, and the courts should liberally utilize the available and reasonable means of enforcing their judgments and decrees."); cf, Integrated Control Sys. v. Ellcon-National, Inc., 2003 U.S. Dist. LEXIS 25310, at *6 n.5 (D. Conn. Aug. 17, 2003) ("This Court expects the complete cooperation of plaintiff in defendant's collection efforts and will respond harshly to any actions perceived as stonewalling…").

[4]   This listing of non-exempt property is comprehensive and includes:  (1) all documents or records, including financial records; (2) all financial accounts (bank account), certificates of deposit, money-market accounts, accounts held any third party; (3) all securities; (4) all real property, equipment, vehicles, boats, and planes; (5) all safety deposit boxes or vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts, and checks; (8) causes of action, choses of action and judgments; (9) contract rights, whether present of future; (10) accounts receivable; and (11) intangible property and property rights including, but not limited to intellectual property rights such as internet domains, patents, copyrights and trademarks.  See the Receivership Order, p, 2.

[5]   The documents to be turned over to the Receiver include the following (going back 36 months):  (1) bank statements; pass books and other bank or financial records; (2) federal income and state franchise tax returns; (3) all motor vehicle Certificates of Title; (4) real property deeds and deeds of trust; (5) business journals, ledgers, accounts payable and receivable files; (6) state sales tax reports; and (7) credit applications and other documents stating debtor's financial condition (for the preceding 72 months). See the Receivership Order, p. 2, and Exhibit A thereto.

---

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 4**
86692v

Receivership Order and Texas law, all of the State Court Defendants' non-exempt property[6] was in *custodia legis* when the State Court signed the Receivership Order.[7]

H. The Receivership Order imposed certain affirmative obligations on the State Court Defendants that included the following:

- **Turnover of Documents and Receivership Assets.** The State Court Defendants were ordered to turnover to the Receiver within 5 days of their receipt of a copy of the Receivership Order (a) the documents contained on Exhibit A to the Receivership Order together with all documents and financial records requested by the Receiver, and (b) all checks, cash, securities (stocks and bonds), promissory notes, documents of title and contracts owned by or in the name of the State Court Defendants.[8]

- **Turnover of Business Documents.** The State Court Defendants were ordered to identify and turnover to the Receiver all interests of the State Court

---

[6] With a few rare exceptions (*e.g.* Bibles) personal property is presumed non-exempt. See In re Wisdom, 490 B.R. 412, 416 (D. Idaho 2013) ("Problem" with the argument that exemptions are "self-effectuating [is] the basic principle that an 'exemption must be claimed in order to have it be effective...'"); In re Meyers, 483 B.R. 89 (Bankr. W.D.N.C. 2012) ("Exemptions are not self-effectuating… a debtor who fails to schedule an asset generally is not entitled to claim an exemption in it."); *cf.* In re Trofatter, 424 B.R. 247, 251 (Bankr. W.D. Mich. 2010) (Finding that even personal exemptions guaranteed by the State's Constitution are not self-effectuating). Heckert v. Heckert, 2017 Tex. App. LEXIS 10570, at *9, n.4 (Tex. App.—Fort Worth 2017, no pet.) ("Intermediate appellate courts, including this court, have long held that once a judgment creditor proves that a judgment debtor owns certain property, the judgment debtor has the burden to prove that property is exempt from attachment, execution, or seizure."); Kornman v. Faulkner, 2014 Tex. App. LEXIS 4263, at *12 (Tex. App.—Dallas 2014, no pet.) ("Kornman had the burden to establish the items he claimed as his personal property were exempt as well as to present to the trial court evidence of itemized personal property not to exceed $60,000 in value… Kornman's failure… prevented the trial court from concluding he was entitled to the exemptions"); Mullins v. Looke, 27 S.W. 926, 927 (Tex. Civ. App.—Fort Worth 1894) (Burden unquestionably was upon judgment debtor, both to aver and prove the exemption of the property).
A judgment debtor must protect itself. To avoid waiver or prejudice, a judgment debtor who wants the benefit and full protection of a personal property exemption must judicially establish that exemption immediately. See generally Ex parte Johnson, 654 S.W.2d 415, 418 n.1 (Tex. 1983) ("The judgment rendered against Johnson in February 1982 put him on notice that post-judgment collection proceedings would follow."); Gonzales v. Daniel, 854 S.W.2d 253, 257 (Tex. App.—Corpus Christi 1993, orig. proceeding) ("Generally, an execution is issued by the clerk upon application without notice to the debtor. A judgment debtor may protect itself from execution by timely posting a supersedeas bond.").

[7] Texas Trunk Railway Co. v. Lewis, 16 S.W. 647, 648-649 (Tex. 1891) ("[P]ossession of the property was not essential to the right of the court to control it… The order of the court either impliedly or expressly takes the title from the parties and rests it in the receiver from that moment"); Texas American Bank/West Side v. Haven, 728 S.W.2d 102, 104 (Tex. App.—Fort Worth 1987, writ dism'd w.o.j.) (Once a receiver is appointed, the judgment debtor's property is in custodia legis, or in the custody of the court); *See generally*, In re Meter Maid Indus., Inc., 462 F.2d 436, 438 (5th Cir. 1972) (The doctrine of custodia legis refers to the power of court to assume complete control over the Debtor's assets).

[8] Receivership Order, p. 2.

---

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 5**
86692v

Defendants in any business or venture and all agreements, stock certificates and other documents pertaining to the State Court Defendants' ownership in the business or venture within 5 days from the State Court Defendants' receipt of a copy of the Receivership Order.[9]

- **Continuing Duty.** The State Court Defendants were ordered to continue, until the Judgment is paid in full, to turnover to the Receiver at the Receiver's address, all checks, cash, securities, promissory notes, documents of title, and contracts within 3 days from the State Court Defendants' receipt and possession of any such property.[10]

### C. WARDEN'S WILLFUL AND MALICIOUS FAILURE AND REFUSAL TO COMPLY WITH THE RECEIVERSHIP ORDER

I.   After the Receiver was appointed, he filed his oath and posted his bond on April 27, 2017. Later that afternoon, the Receiver visited Venture's offices. The Receiver was permitted to inspect the leasehold, but the Property Manager had already locked Ventures out of the premises. During the time period of May 12 – June 20, 2017, the Receiver collected the State Court Defendants' cash and property through several levies. The Receiver's levies of cash include the following:

| DATE PAYMENT RECEIVED | SOURCE OF PAYMENT | AMOUNT OF PAYMENT ($) |
|---|---|---|
| May 12, 2017 | Cirque Unit 1106, 2500 N. Houston St., Dallas, TX 75219 | 9.70 |
| June 1, 2017 | Chase Bank, via cashier's check dated May 26, 2017 | 17,971.73 |
| June 2, 2017 | Veritex Community Bank, via cashier's check dated May 30, 2017 | 3,805.18 |
| June 17, 2017 | Havana Social Club, 3030 Olive St., Suite 103, Dallas, TX | 1,002.11 |

The Receiver's levies on personal property include the following:

| DATE OF LEVY | LOCATION OF LEVY | PERSONAL PROPERTY LEVIED |
|---|---|---|
| May 12, 2017 | Cirque Unit 1106, 2500 N. Houston St., Dallas, TX 75219 | Samsung large screen television with remote, pool table, couch with pillows, xBox video game equipment, king size bed and |

---

[9]   Receivership Order, p. 2.
[10]  Receivership Order, p. 2.

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 6**
86692v

| DATE OF LEVY | LOCATION OF LEVY | PERSONAL PROPERTY LEVIED |
|---|---|---|
|  |  | bedding, night stands, headphones, Apple Ipad, several pairs of men's boot, Keurig coffee maker, George Foreman Grill |
| May 30, 2017 | 1900 Carnegie Lane, Grapevine, TX 76051 | Personalized photograph album of Melton's football accomplishments at the University of Texas, assorted sports memorabilia, large wall-hanging picture |
| June 17, 2017 | W (Residences – South Tower), 2408 Victory Park Lane, Dallas, TX | 2014 Land Rover, Range Rover Model, Texas License Plate GHH-5908; color white |

The Receiver's levies are detailed in his Receiver's Report of June 20, 2107.

J. Warden and the other State Court Defendants did not cooperate with the Receiver, and they failed and refused to comply with the Receivership Order. Warden's violations of the Receivership Order include the following infractions:

- **The Levied Assets Violation.** Warden did not turnover to the Receiver any documents contained on Exhibit A to the Receivership Order, any documents and financial records requested by the Receiver, or any checks, cash, securities (stocks and bonds), promissory notes, documents of title or contracts owned by or in the name of the State Court Defendants. Warden had these assets to turnover to the Receiver, but he chose not to surrender them. Warden could have voluntarily tendered them to the Receiver, but he willfully and maliciously failed and refused to do so (the "Levied Assets Violation").

- **The Business Documents Violation.** Warden did not identify or turnover to the Receiver all interests that Warden had in any business or venture and all agreements, stock certificates and other documents pertaining to the Warden's ownership in the business or venture. Warden had these documents to turnover to the Receiver, but he willfully and maliciously chose not to surrender them (the "Business Documents Violation").

- **The Ventures Bank Account Violation.** The Receivership Order was entered on April 25, 2017. It was served on Warden on April 27, 2017. On May 1, 2017, $158,000 was withdrawn from a Ventures bank account. This money could have been, and should have been, turned over to the Receiver, but that did not happen. Warden willfully and maliciously did not surrender that money to the Receiver but, instead diverted those funds to his other business interests. Had that money been surrendered to the Receiver, the money and the items that

___

**AGREED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DETERMINING DEBT TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(A)(6) – PAGE 7**
86692v

- **The Worst Behavior Bank Account Violation.** Warden used the bank account of Worst Behavior as his own personal bank account in order to avoid complying with and obeying the Receivership Order and escaping the Receiver's collection efforts. Warden could have and should have surrendered his personal funds in that account to the Receiver, but he did not. Instead of doing that, Warden willfully and maliciously financed his ongoing lifestyle with that money (the "Worst Behavior Bank Account Violation").

the Receiver levied upon would have paid off the balance of the Judgment, with only costs remaining (the "Ventures Bank Account Violation").

## II. CONCLUSIONS OF LAW

K.  The Levied Assets Violation was a willful and malicious injury committed by Warden against the Receiver under § 523(a)(6).

L.  The Business Documents Violation was a willful and malicious injury committed by Melton against the Receiver under § 523(a)(6).

M.  The Ventures Bank Account Violation was a willful and malicious injury committed by Melton against the Receiver under § 523(a)(6).

N.  The Worst Behavior Bank Account Violation was a willful and malicious injury committed by Melton against the Receiver under § 523(a)(6).

O.  The Receiver's claim against Warden in the Second Bankruptcy Case are for amounts owed pre-petition and post-petition.

P.  The components of the Receiver's claim against Warden in the Second Bankruptcy Case include, without limitation: (1) amounts unpaid under the Judgment; (2) the Levied Assets Violation; (3) the Business Documents Violation; (4) the Ventures Bank Account Violation; (5) the Worst Behavior Bank Account Violation; and (6) reasonable costs, including attorney's fees and expenses, under TEXAS CIVIL PRACTICE AND REMEDIES CODE § 31.002(e).

## III. J̲U̲D̲G̲M̲E̲N̲T̲

It is hereby ORDERED, ADJUDGED and DECREED that:

1. The Receiver's claim against Warden in the Second Bankruptcy Case is for amounts owed pre-petition and post-petition.

2. The Receiver's claim against Warden in the Second Bankruptcy Case is non-dischargeable under § 523(a)(6).

3. The Receiver's non-dischargeable claim against Warden in the Second Bankruptcy Case under § 523(a)(6) includes his reasonable costs, including attorney's fees, and expenses under TEXAS CIVIL PRACTICE AND REMEDIES CODE § 31.002(e), including any amounts the Receiver would be permitted to recover under the Receivership Order.

**Agreed as to Form and Content:**

**NELIGAN LLP**

By: */s/ Seymour Roberts, Jr.*
Seymour Roberts, Jr.
Texas State Bar No. 17019150
sroberts@neliganlaw.com
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

**COUNSEL FOR ANDREW R. KORN, RECEIVER**


**WILEY LAW GROUP, PLLC**

/s/ KEVIN S. WILEY, SR.
Kevin S. Wiley, Sr.
Texas Bar No. 21470700
Kevin S. Wiley, Jr.
Texas State Bar No. 24029902
325 N. St. Paul, Ste. 2750
Dallas, Texas 75201
Telephone: (469) 484-5016
Facsimile: (469) 484-5004
Kevin.wileysr@tx.rr.com

**COUNSEL FOR DEBTOR MICHAEL GEORGE WARDEN**


# # # END OF JUDGMENT # # #

---